UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| RACHEL HOLMES and SHARON MEYER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> vs. <br><br> GC SERVICES LIMITED PARTNERSHIP, <br><br> Defendant. | Case No.: 17-cv-960 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Rachel Holmes is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Sharon Meyer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiffs are "consumers" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them debts allegedly incurred for personal, family or household purposes.

6. Defendant GC Services, Limited Partnership ("GCS") is a foreign corporation with its principal place of business located at 6330 Gulfton, Houston, TX 77081.

7. GCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. GCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. GCS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### Collection Efforts Directed Towards Plaintiff Rachel Holmes

9. On or about February 14, 2017, GCS mailed a debt collection letter to Plaintiff Holmes regarding an alleged debt owed to "Citibank, N.A." ("Citibank"). A copy of this letter is attached to this Complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A is an alleged personal credit card account, used only for personal, family or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by GCS to attempt to collect alleged debts.

13. Exhibit A contains the following settlement offer:

> We'd like to speak to you about your tax refund and how it can help you take advantage of the following offer to settle your Citibank, N.A. account. If you pay 70% of the new balance, our client will consider your account settled.
>
> If you've received your tax refund, this is an excellent opportunity to take care of your account. If you wish to take advantage of this offer, either call our office at 800-457-2370 or mail us your payment for $627.63. Please note the payment must be for the exact amount stated in this letter and must be received no later than fourteen (14) days from the date of this letter or this particular offer will be null and void. Please understand our client is not obligated to renew this offer.

2

14. Exhibit A states that payment "for the exact amount stated in this letter" must be received within 14 days of the date of Exhibit A in order to accept the offer. Exhibit A.

15. Just below that, however, Exhibit A states:

> \* As of the date of this letter, you owe $896.62. Because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you.

16. By stating that the settlement offer is for 70% of the balance, which balance is subject to change because of interest, late charges and other charges that may vary from day to day, Exhibit A implies that the amount of money necessary to settle the alleged debt changes and may not be the amount stated in the letter.

17. However, in reality, either the settlement offer is for the set, pre-determined amount of $627.63 or it is not. It either varies or it does not.

18. Exhibit A contradicts itself and fails to state the terms of the settlement offer in a non-confusing manner. The amounts $627.63 and $896.62 are both "shown above" the language identified in Paragraph 16 of this complaint.

19. The unsophisticated consumer could not determine from Exhibit A if the settlement offer is for a set amount or a possibly variable amount.

20. The normal meaning of "settling" a debt means that the debt is permanently resolved in exchange for a payment of a portion of the balance.

21. The consumer could send a check for $627.63 and would not know whether he had sent enough money to actually settle the account, due to the possibility that GCS or Citibank had added interest or other charges to the settlement amount.

22. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would

3

Case 2:17-cv-00960-PP    Filed 07/12/17    Page 3 of 14    Document 1

leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). But where a few remaining dollars or cents of interest prevent settlement, GCS could continue to collect the entire remaining balance of the alleged debt.

23. <u>Exhibit A</u> also contains the following language:

> Citibank, N.A. may report a discharge of indebtedness if required by applicable tax law. This reporting may have tax consequences to you. Please contact your tax advisor if you have any questions.

24. In fact, it is apparent from <u>Exhibit A</u> that Citibank would not have to report any discharge of indebtedness to the Internal Revenue Service ("IRS") arising from the settlement offer to Holmes.

25. Internal Revenue Code, 26 U.S.C. §6050P, and Treasury Regulations, 26 C.F.R. §1.6050P-1 requires reporting of certain discharges of indebtedness.

26. Reporting is not required:

    a. Of the discharge of indebtedness that is interest or other non-principal amounts, 26 C.F.R. §§1.6050P-1(d)(2) and (3);

    b. Of the discharge of principal not exceeding $600.

27. The settlement offer in <u>Exhibit A</u> sought to settle Plaintiff Rachel Holmes' alleged balance of $896.62 for a one-time payment of $627.63. Accepting the offer and making that payment could possibly discharge only $268.99.

28. Moreover, much of the alleged $896.62 balance consists of interest and fees.

29. Even assuming the entire discharge of $268.99 was principal, Citibank was not required to report it.

30. Upon information and belief, Citibank files an IRS Form 1099C as a general practice, whenever a consumer discharges more than $600 pursuant to a settlement.

4

31. Upon information and belief, neither Northland nor Citibank take any steps to determine whether the IRS *actually* requires the creditor to file a 1099C in any particular consumer's circumstance.

32. Referring to "tax consequences" in a collection letter is intimidating and misleading. It suggests to the unsophisticated consumer that failure to pay the debt in full will give rise to problems with the IRS.

33. Exhibit A misleads the unsophisticated consumer by implying that:

   a. Unless the consumer pays the entire amount that the defendant alleges is owed on the alleged debt, the consumer could be reported to the IRS.

   b. Unless the consumer pays the entire amount the letter alleges is owed for the debt, the consumer is going to have to pay taxes on the unpaid balance.

34. Sometimes, issuing a 1099C when not required does, in fact, create problems with the IRS and state taxing authorities. Persons who do not report the discharged amount listed on a 1099C as income are at risk to receive a tax deficiency notice or a reduced refund.

35. Defendant voluntarily chose to give the tax advice found in Exhibit A. No law or regulation obligates defendants to include the statement complained of in collection letters.

36. Plaintiff Holmes was confused by Exhibit A.

37. Plaintiff Holmes had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

38. Plaintiff Holmes had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise her on the consequences of Exhibit A.

5

### Collection Efforts Directed Towards Plaintiff Sharon Meyer

39. On or about August 4, 2016, GCS mailed a debt collection letter to Plaintiff Sharon Meyer regarding an alleged debt owed to "CHASE BANK USA, N.A." ("Chase Bank"). A copy of this letter is attached to this Complaint as Exhibit B.

40. Upon information and belief, the alleged debt referenced in Exhibit B is an alleged personal credit card account, used only for personal, family or household purposes.

41. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

42. Upon information and belief, Exhibit B is a form debt collection letter used by GCS to attempt to collect alleged debts.

43. Exhibit B contains the following settlement offer:

> We'd like to let you know that our client, CHASE BANK USA, N.A., has authorized us to make you a settlement offer on your account. If you pay 41% of the total amount due, our client will consider your account settled.
> This is an excellent opportunity to take care of your account. If you wish to take advantage of this offer, either call our office at 866-391-0768 or mail us your payment of $1,213.41. Please make your payment payable to "CHASE BANK USA, N.A." Please note the payment must be for the exact amount stated in this letter and must be received no later than fourteen (14) days from the date of this letter or this particular offer will be null and void. Please understand our client is not obligated to renew this offer.

44. Exhibit B states that Plaintiff Meyer could settle her alleged balance of $2,959.54 by paying 41% of the total amount due. It further states, "If you wish to take advantage of this offer . . . mail us your payment of $1,213.41. . . . Please note the payment must be for the exact amount stated in this letter and must be received no later than fourteen (14) days of the date of this letter or this particular offer will be null and void." Exhibit B.

45. On or about September 8, 2016, GCS mailed a debt collection letter to Plaintiff Sharon Meyer regarding an alleged debt owed to "CHASE BANK USA, N.A." ("Chase Bank"). A copy of this letter is attached to this Complaint as Exhibit C.

6

46. Exhibit C contains the following settlement offer, which is identical to the settlement offer made in Exhibit B:

> We'd like to let you know that our client, CHASE BANK USA, N.A., has authorized us to make you a settlement offer on your account. If you pay 41% of the total amount due, our client will consider your account settled.
>
> This is an excellent opportunity to take care of your account. If you wish to take advantage of this offer, either call our office at 866-391-0768 or mail us your payment of $1,213.41. Please make your payment payable to "CHASE BANK USA, N.A." Please note the payment must be for the exact amount stated in this letter and must be received no later than fourteen (14) days from the date of this letter or this particular offer will be null and void. Please understand our client is not obligated to renew this offer.

47. Exhibit C states that Plaintiff Meyer could settle her alleged balance of $2,959.54 by paying 41% of the total amount due. It further states, "If you wish to take advantage of this offer . . . mail us your payment of $1,213.41. . . . Please note the payment must be for the exact amount stated in this letter and must be received no later than fourteen (14) days of the date of this letter or this particular offer will be null and void." Exhibit C.

48. Upon information and belief, the terms of Plaintiff Sharon Meyer's credit arrangement authorized Chase Bank to charge interest against Meyer's account while the account was in collections.

49. Upon information and belief, interest accrued between August 4, 2016 and September 8, 2016 and the total amount due Chase Bank on September 8, 2016 was greater than $2,959.54.

50. Upon information and belief, payment of $1,213.41 would not have been 41% of the total amount due Chase Bank at the time Exhibit C was mailed to Plaintiff.

51. In light of Exhibit B, the unsophisticated consumer would not have been able to determine from Exhibit C whether the settlement offer was for a set amount of $1,213.41 or for the variable amount of "41% of the total amount due."

7

52. The consumer could send a check for $1,213.41 and would not know whether she had sent enough money to actually settle the account, due to the possibility that GCS or Chase Bank had added interest or other charges to the settlement amount.

53. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

54. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

55. Upon information and belief, GCS's second letter to Plaintiff Meyer (Exhibit C) fails to correctly state the amount of the debt on the date that the letter was sent to the consumer.

56. Moreover, the consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt

8

would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). But where a few remaining dollars or cents of interest prevent settlement, GCS or Chase Bank could continue to collect the entire remaining balance of the alleged debt.

57. Plaintiff Meyer was confused by Exhibits B and C.

58. Plaintiff Meyer had to spend time and money investigating Exhibits B and C, and the consequences of any potential responses to Exhibits B and C.

59. Plaintiff Meyer had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits B and C.

### *The FDCPA*

60. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute,"

9

(quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

62. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

63. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

64. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

65. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## COUNT I – FDCPA

66. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. GCS's letter to Plaintiff Holmes provides a purported "settlement offer," but that offer is misleading, as the amount necessary to effectuate the settlement may be greater than the amount printed on the letter and is unspecified.

68. A consumer who mails a payment in the full amount of the "settlement amount" listed on the letter cannot determine whether he or she has sent enough money to actually settle the claim.

69. GCS's letter to Plaintiff Rachel Holmes (Exhibit A) encourages settlement payments to be short of the amount necessary for the creditor to agree to settle the alleged debt, allowing GCS or the creditor to continue collecting the remaining balance of the alleged debt, plus additional interest.

70. GCS's letter to Plaintiff Rachel Holmes also refers to tax consequences that do not apply to her.

71. By referring to "tax consequences," GCS's letter to Plaintiff Rachel Holmes is intimidating and misleading, suggesting to the unsophisticated consumer that failure to pay the debt in full will cause her debt discharge to be reported to the IRS and/or make her liable for taxes on any unpaid balance.

72. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

## COUNT II – FDCPA

73. Plaintiff Sharon Meyer incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74. GCS's letters to Plaintiff Sharon Meyer (Exhibits B and C), sent approximately one month apart, provide purported "settlement offers" of "41% of the total amount due," or $1,213.41.

11

75. The offers are misleading because, as a result of additional interest and fees, the balance of the Chase account increased between the dates that GCS mailed Exhibits B and C to Plaintiff.

76. At the time Plaintiff received Exhibit C, the representations therein that 41% of the balance equaled $1,213.41 was false and misleading.

77. Exhibits B and C are ambiguous and confusing as to the amount necessary to effectuate the settlement. The amount necessary to settle may be greater than the amount printed on the letter and is unspecified.

78. A consumer who mails a payment in the full amount of the "settlement amount" listed on Exhibit C may not have sent enough money to actually settle the claim.

79. GCS's letter to Plaintiff Sharon Meyer (Exhibit C) encourages settlement payments to be short of the amount necessary for the creditor to agree to settle the alleged debt, allowing GCS or the creditor to continue collecting the remaining balance of the alleged debt, plus additional interest.

80. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

## CLASS ALLEGATIONS

81. Plaintiffs bring this action on behalf of two classes.

82. Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) between July 12, 2016 and July 12, 2017, inclusive, (e) that was not returned by the postal service. Rachel Holmes is the designated representative for Class I.

83. Class I also includes a Subclass of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters in the form represented by Exhibit A to the

complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) and including a settlement offer that would forgive or cancel less than $600.00, (e) between July 12, 2016 and July 12, 2017, inclusive, (f) that was not returned by the postal service. Rachel Holmes is the designated representative for this Subclass.

84. Class ("Class II") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters in the form represented by Exhibits B and C to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) July 12, 2016 and July 12, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Sharon Meyer is the designated representative for Class II.

85. Each class and subclass is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class and subclass.

86. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A, B or C violate the FDCPA.

87. Plaintiffs' claims are typical of the claims of class members. All are based on the same factual and legal theories.

88. Plaintiffs will fairly and adequately represent the interests of class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

90. Plaintiffs hereby demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 12, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com

14

Case 2:17-cv-00960-PP   Filed 07/12/17   Page 14 of 14   Document 1